May 2, 1904.

———————O———————

No. 3384.

(Court of Appeal, Parish of Orleans.)

LEVERT, BURGUIERES & CO., LTD. AND CAMBON BROS.

vs. HOME INSURANCE CO.

1. Where a portion of the property covered by insurance is under seizure the policy is nevertheless operative against the remainder of the property not seized; notwithstanding a clause in the policy that it should be void, if there is any change in the ownership.

2. The fraudulent attempt of the insured to impose on the insurer in possession of the proofs of loss by swelling the quantity of the effects destroyed by fire, although good ground for avoidance of the policy must be specially pleaded, and cannot be urged under tne general issue which simply denies the facts of the petition. Hen. D. pg. 1153 No. 10 and 108. La. 883.

3. Questions of facts are otherwise involved in this case.

Appeal from Civil District Court Division E.

Saunders & Gurley, for plaintiff and appellee.

R. H. Browne, Clegg & Quintero, for defendant and appellant.

BEAUREGARD, J.   On a policy of insurance for $5500 made payable to Levert, Burguieres & Co. issued to the Cambon Brothers, owners of the Grand Caillou Plantation in Terrebonne parish, for two months (from December 14, 1901, to February 14, 1902), to cover, during that time, their sugar house and its contents, suit is brought by the plaintiffs to recover the sum of $1857.63, the value of the following, destroyed by fire on January 26, 1902, to-wit:

125 barrels of sugar worth.................................$1328.75
59    "    of molasses worth ...........................  442.50
Cooperage and bundle of hoops worth...................   86.40

From the decree of the Court a qua in plaintiff's favor up to the amount of the last item mentioned above, to-wit: $86.40, the defendant company has appealed; and the plaintiffs have, on appeal, prayed for such an amendment as will sustain their demand in full.

The defense urged was the general issue, the non-existence on the premises, at the time of the fire, of the article claimed to have been consumed.

And further, the annulment of the policy, under its terms, by the execution of several writs of seizure on or about January 10, 1902, issued at the instance of several of the creditors of the Cambon Bros.

If it be true (as it is) that a contract is the law between the parties the annulment of the policy would follow under the following clause : "If any change, other than by the death of the insured, takes place in the interest, title or possession of the subject of insurance, whether by legal process, or judgment or by voluntary act of the insured or otherwise;" but this clause has no application since it is contended, that if a seizure did take place it was unavailing as to that property which was not seized and was therefore still covered by the terms of the policy.

It is true that this ground is not specifically contested; but inasmuch as it is one of the obligations of the defense it was well that it should have been considered and disposed of, thus leading to an examination of the facts of record.

On reference to the Cambon Bros.' sugar book taken in con-

nection with their testimony and including that of their sugar maker who stated that the grinding on the Grand Caillou Plantation had ended on January 3, 1902, and who left on the 4th or 5th of that month, it appears that the total number of barrels of sugar made amounted to 872 barrels, of which (including the number seized) 747 were sent to the plaintiffs in this case with the consent of the seizing creditors whose claims to the proceeds had to yield to plaintiffs superior right of lien and pledge as advances of supplies to the Cambon Bros. So the difference or balance left over, 125 barrels is the number claimed to have remained in the purgery of the sugar house when destroyed by fire on January 26, 1902.

A diagram of this purgery is annexed to the record and was used in the Court a qua to show the location of the sugars and tanks containing the molasses seized by the Sheriff on January 9, 1902, and that of the sugars claimed to have been destroyed on January 26, and not under seizure.

The diagram follows.

The voluminous evidence taken out of the presence of the trial judge, but submitted to him; whilst that of the Sheriff and of his deputy who executed the writs of seizure was heard by him have led our able brother of the Court a qua, in his reasons for his decree to use the following language : "After a careful analysis of the testimony in this cause, I have been unable to give full faith to the evidence of the Cambon Brothers who sought to prove the presence in the purgery of the 125 or rather 121 barrels of sugar in question. The inconsistencies, contradictions and improbabilities of their testimony are so patent as not to require to be pointed out. I accept as true the statement of the Deputy Sheriff Livette that there were in the sugar house or purgery at the time of execution of the writs no other barrels of sugar than the 132 upon which he levied in the front part of the building at the spot marked x upon the plan in evidence. Had there been 121 more in the "space" near the molasses tanks, he would have been instructed to seize all, would have seized them. The time of levy was between two and four o'clock in the afternoon, that is to say in broad daylight; and he had full view of the entire room.

Not content with his own observation, he asked Sylvester (one of the Cambon brothers afterwards appointed Sheriff's keeper) if the sugar at X was all the sugar in the place and received an affirmative answer. And, after effecting the seizure, he stood on the very spot where the additional 121 barrels of sugar are now claimed to have been; and for nearly an hour conversed with Sylvester (at that spot).

In fact the locus in quo, as appears from the plan, was such as to make it impossible for Livette not to have seen the 121 barrels

209

claimed to have been in the corner near the tanks; unless, in clear deriliction of duty, he had chosen to shut his eyes to them. And inasmuch as no sugar went into the sugar house subsequent to January 9, the date of seizure, it follows that there were at the time of the fire—January 26, 1903, only the four barrels that had not yet been shipped "to plaintiffs out of those lined upon at X."

A careful review of the evidence of record and so clearly analyzed by the judge a qua, leaves not the slightest doubt as to the correctness of that analysis. If it be true that, between the total amount of the sugar barrels made—872—and the amount shipped—747—there was a difference outstanding of 125 barrels the inconsistencies, contradictory statements and improbabilities in the testimony of the Cambon brothers as to the fact that the 125 barrels of sugar were in the spot "space" with a deputy Sheriff executing writs of seizure, standing for an hour on or within a few feet of "space" without seeing 121 barrels of sugar corded up in this corner or on that spot tax credibility.

Continuing in his opinion, the Judge a qua held that the four barrels (of the 125) had been under seizure as well as the contents of the tanks; so these articles i. e. the 4 barrels of sugar and the additional 59 barrels of molasses, pumped out of the tanks, subsequently to the 38 barrels obtained therefrom by the Sheriff, were under seizure, and under the policy clause cited above and the law between the parties, not recoverable as to their value.

But as to the last item; the bundle of barrel hoops and the molasses and sugar barrels destroyed by the fire and not seized, and for the value of which the defendant company was adjudged to be bound, there is uncontradicted proof of the existence of these articles, at the time of the fire.

On this point also we agree with the District Judge when he says: "This attempt of the insured to impose upon defendant by swelling the quantity of the effects destroyed by fire is good ground for the avoidance of the policy. The case of Schmidt vs Philadelphia Underwriters 109 La. 884 is directly in point. But there the plea in avoidance was specially made, whereas here it was not and the rule of law is well settled that matters of defense tending to show the extinction of an obligation admitted to have once existed cannot be urged under the general issue, which only denies the facts in the petition. Hen. Digs. Verbo Readings V. (b) 5, 6 No. 10 pg. 1153.

We fail to find any error in the judgment appealed from, it should be affirmed. And it is now so ordered.

Judgment affirmed.